Argued October 1, affirmed December 12, 1962

## STATE LAND BOARD *v.* PORT OF PORTLAND
### 376 P. 2d 661

*Lofton L. Tatum,* Portland, argued the cause for appellant. With him on the briefs were Wood, Wood, Tatum, Mosser & Brooke, Portland.

*Peter S. Herman,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Robert G. Danielson, Assistant Attorney General.

608

Before McAllister, Chief Justice, and Rossman, Sloan, O'Connell, Goodwin and Lusk, Justices.

PER CURIAM.

This is an action by the State Land Board against the Port of Portland to recover royalties for riverbed material taken from the Columbia River. The Port appeals from a judgment for the State Land Board.

In 1959 the Port dredged fill material from the river for use in connection with airport improvements and industrial sites. It is agreed that 170,500 cubic yards of material were used more than one-half mile from the bank of the Columbia River. The state demands royalties for this amount only, and concedes that no payment is due for the balance of the material taken.

The Port contends that it need not pay for any of the material because, it says, the material was not used for a "commercial" purpose. We need not decide in this case whether the material was used commercially, because that question is irrelevant. The state correctly points out that under the then controlling statutes the duty to pay for the material taken arises from its use beyond the half-mile limit, and not because the use was a "commercial" one. General Laws of Oregon 1920 (Special Session), ch 32, is the forerunner of ORS 274.540 to 274.580. In 1953 the original statute, as amended from time to time during the intervening years, was reenacted as Oregon Laws 1953, ch 181, the pertinent part of which reads as follows:

"* * * The removal of gravel, rock, sand, silt or other material from the bed or bars of any navigable stream within the state is authorized when the same is removed for channel or harbor improvement or flood control, and the removal of

gravel, rock, sand, silt or other material from the bed or bars of any navigable stream within the State of Oregon is authorized when the material is used for filling, diking or reclaiming land located not more than one-half mile from the bank of the stream. No payment of royalty shall be required for such gravel, rock, sand, silt or other material unless the same shall hereafter be removed from the place deposited and sold or used as an article of commerce. Before any such material may be removed from the place deposited and sold or used as an article of commerce, the State Land Board shall be duly notified in writing of such intended removal and sale or use as an article of commerce and payment shall be made to said State Land Board of such royalty as the board may fix therefor. In addition to the purposes above enumerated, any person may take gravel, rock, sand, silt or other material for his own exclusive use to the extent of not more than 50 cubic yards in any one year. Any person, firm or corporation, before taking gravel, rock or sand from state properties, except in the manner and for the purposes aforementioned in this section, shall apply to the State Land Board for a lease, and such application shall be accompanied by a map or plat showing the premises. Upon receipt of such application and map or plat the State Land Board may award a lease to the applicant and fix a royalty. The establishment or placing of a dredging or digging outfit on any waters or stream, the bed of which belongs to the State of Oregon, and the removal of material from the bed thereof for commercial uses, without having applied for and received a lease, hereby is declared to constitute a continuing trespass.

"* * * * *"

In the preparation of the Revised Statutes, the foregoing statute was divided into several sections. These sections, since 1953, have been found in ORS

ch 274. Recent versions appear in the accompanying opinion. Two or more of the sections may appear to be in conflict with each other when read separately. See, e.g., the provision in ORS 274.580 which the defendant contends should be read as if it required *only* those using material for commercial purposes to comply with the other relevant sections of the chapter. The conflict, however, is more apparent than real. When the original act as adopted by the Legislative Assembly is read as a whole, it is clear that freedom from liability for rentals is granted for the removal of material for only those purposes named in the original act, whether commercial or noncommercial. ORS 274.540 provided at all material times:

> "Before any person shall take any gravel, rock or sand from state properties, except in the manner and for the purposes mentioned in ORS 274.550, he shall apply to the State Land Board for a lease, and such application shall be accompanied by a map or plat showing the premises. Upon receipt of such application and map or plat the State Land Board may award a lease to the applicant and fix a royalty."

This section prohibited the removal of stream-bed materials without payment of a royalty unless the use falls within one of the exceptions mentioned in ORS 274.550. The prohibition in ORS 274.540 is not stated in terms of the commercial or noncommercial character of the use. Consequently the removal of materials for *any* purpose is prohibited without payment of a royalty unless the use is within one of the exceptions in ORS 274.550.

When the relevant sections are read together, particularly in the form in which they were enacted, it is clear that the legislature intended that the state

be paid for any materials removed, in excess of 50 cubic yards in any year, unless the material was used for filling, diking, or reclaiming land located not more than one-half mile from the bank of the stream. Since the Port used that portion of the material for which payment is demanded in this action beyond the half-mile limit, the trial court correctly construed the statutes as requiring payment.

Affirmed.

O'CONNELL, J., specially concurring.

This case was originally assigned to me but the opinion which appears below was not acceptable to my brethren who sat on the case. We all agree that the judgment must be affirmed. Our only point of difference is in the treatment of *State v. Port of Portland,* 168 Or 120, 121 P2d 478 (1942), which is discussed below.

In my opinion *State v. Port of Portland* erred in classifying the use in question as a non-commercial use. As I point out in the rejected opinion, "It is difficult to say whether *State v. Port of Portland,* supra, is still apposite in view of the enactment of intervening amendments * * *." But if we do not discredit the case now it will continue to haunt us in briefs and arguments. I believe that we are justified in doing this type of housecleaning job on a matter which is so closely related to the interpretation of the existing statutes. The rejected opinion with minor alterations follows.

This in an action brought by the State Land Board for the payment of royalties for the removal by defendant of river bed material from the Columbia river. Defendant appeals from a judgment for plaintiff.

Defendant dredged 328,760 cubic yards of sand and gravel from the Columbia river. Of this amount

278,500 yards was used to make fills in an area designed as an industrial site for industries related to aircraft and to the operation of the Portland airport. 50,200 cubic yards were used as a fill for an air strip overrun extension. Of the total amount of 328,760 cubic yards of sand and gravel used on the land located within the boundaries of the airport, 170,500 yards were used more than one-half mile from the bank of the Columbia river.[1] Plaintiff made claim for royalties for this amount only.

Defendant contends that under the Oregon statutes relating to the removal of river bed material it is not obligated to pay for the sand and gravel it used.[2] Defendant relies principally upon ORS 274.580, which provides as follows:

"No person shall remove gravel, rock, sand or silt from the bed of any navigable stream of water, or from the bars of any navigable stream, or from any property of the State of Oregon, for commercial uses without complying with the provisions of ORS 274.540 to 274.560."

Defendant argues that the use of the gravel in making fills for an industrial site and for an airport overrun extension is not a "commercial" use and that, therefore, there is no prohibition against the taking of sand and gravel for such use and no obligation to pay royalties for the removal of sand and gravel for that purpose.

---

[1] ORS 274.550 authorizes the removal of stream bed materials "when the material is used for filling, diking, or reclaiming land located not more than one-half mile from the bank of the stream." No payment of royalty is required for the removal of such materials. ORS 274.550 (2).

[2] No contention is made by defendant that it is exempt from payment because of its status as a municipal corporation. See State v. Port of Portland, 168 Or 120, 121 P2d 478 (1942) recognizing that the Port of Portland is liable for the stipulated royalty unless the material was taken for a noncommercial use.

It would seem clear that the removal of the materials by the defendant in this case was for a commerical purpose within the intendment of the statutes relating to the removal of stream bed materials. Unfortunately the case of *State v. Port of Portland,* 168 Or 120, 121 P2d 478 (1942) casts doubt upon this conclusion. In that case it was held that sand pumped from a river bed onto lowlands for the purpose of raising their level was not taken for a commercial purpose within the meaning of the then existing statutes. The materials pumped from the river bed included large quantities of earth, silt and the like. It was noted that they are "not ordinarily a commercial product."[9] (168 Or at p. 126) The parties stipulated that the material taken was sand. The court said that "[e]ven in view of the stipulation describing the material taken as sand, there is no evidence that it was such as ordinarily goes into the channels of trade by that name." (168 Or at p. 127) The court regarded as immaterial the fact that the land was being prepared for the prosecution of a commercial enterprise. The court held that this did not constitute a taking of the sand for commercial uses since under the circumstances the sand was not "used as an article of commerce" (168 Or at p. 129) within the meaning of § 121–603, OCLA, which as amended became ORS 274.550. It is difficult to say whether *State v. Port of Portland,* supra, is still apposite in view of the enactment of intervening amendments to the statutes relating

---

[9] The court relied upon the following language which appeared in § 121–603, OCLA and which in substance now appears in ORS 274.550 (2):

"No payment of royalty shall be required for such gravel, rock, sand, silt or other material unless the same shall hereafter be removed from the place deposited and sold or used as an article of commerce."

to the removal of stream bed materials. The facts in *State v. Port of Portland,* supra, occurred prior to the amendment of what is now ORS 274.550 which added what is now subsection (3) of ORS 274.550. This amendment put the following limit on the amount of materials a person is authorized to take for his own use:

"(3) In addition to the purposes enumerated in subsection (1) of this section, any person may take such gravel, rock, sand, silt or other material for his own exclusive use to the extent of not more than 50 cubic yards in any one year; however, prior to such taking, the person contemplating such taking shall first notify the State Land Board, and the board shall in turn notify the state agencies mentioned in ORS 274.530."

*State v. Port of Portland* was in error in holding that the use of the sand in that case was not for a commerical use. Consequently, to the extent that the case is applicable, it should be overruled on this point.

In the present case the use of the stream bed materials in filling land for an industrial site is for a commercial use and comes within the prohibition of ORS 274.580 set out above. It follows that defendant had to obtain a lease[4] and pay the price fixed by the State Land Board.[5]

However, the parties have argued the case on the assumption that defendant's use was for a non-commerical purpose. The pertinent statutes would present

---

[4] ORS 274.540 provides: "Before any person shall take any gravel, rock, sand or silt from state properties, except in the manner and for the purposes mentioned in ORS 274.550, he shall apply to the State Land Board for a lease, and such application shall include a complete description of the location of the contemplated operation, the time and manner of contemplated removal, and such other pertinent information as the board may

an irreconcilable conflict in this case if we were to accept the assumption that a use such as that made by defendant was not commercial in character. Defendant's use would not be prohibited under ORS 274.580 since that section prohibits only removal for commercial uses. But other sections relating to the removal of stream materials are not consistent with the idea that such materials can be removed for all non-commercial purposes without payment of a royalty. Thus ORS 274.540 provides that:

"Before any person shall take any gravel, rock, sand or silt from state properties, except in the manner and for the purposes mentioned in ORS 274.550, he shall apply to the State Land Board for a lease, and such application shall include a complete description of the location of the contemplated operation, the time and manner of contemplated removal, and such other pertinent information as the board may require. Upon receipt of such application the State Land Board may award a lease to the applicant as provided in ORS 274.530 and fix a royalty."

require. Upon receipt of such application the State Land Board may award a lease to the applicant as provided in ORS 274.530 and fix a royalty."

⑥ ORS 274.530 provides: "(1) The State Land Board may, after notice of competitive bidding, and following such competitive bidding, lease the beds of navigable portions of navigable streams for the purpose of removing gravel, rock, sand and silt therefrom. No lease shall be made for a lump sum but only on a basis of the price per cubic yard for the material removed.

"(2) Prior to advertising for bids, the State Land Board shall request information from the appropriate natural resource agencies as to the probable effect of such contemplated gravel, rock, sand or silt removal; and the board shall consult with such agencies relative to provisions which may be included in any lease awarded as a result of competitive bidding.

"(3) The provisions of subsection (2) of this section shall not apply to existing leases, but shall apply to any new lease negotiated after August 9, 1961."

This section prohibits the removal of stream bed materials without payment of a royalty unless the use falls within one of the exceptions mentioned in ORS 274.550. The prohibition in ORS 274.540 is not stated in terms of the commercial or non-commercial character of the use. Consequently the removal of materials for *any* purpose is prohibited without payment of a royalty unless the use is within one of the exceptions in ORS 274.550. If the materials are removed for one of the purposes stated in ORS 274.550 no payment is required unless the materials removed for the excepted purposes are "removed from the place deposited and sold or used as an article of commerce." ORS 274.550 (2). This is not a provision limiting the obligation to pay for materials to those which are removed for sale or use as an article of commerce. The limitation on the exceptions obviously was intended to prevent a person from reaping a profit or realizing a benefit through the sale or use of the materials which had been removed for the purposes excepted in ORS 274.550 (1). A further exception is provided for in ORS 274.550 (3), which is set out above. There it is provided that a person may take not more than 50 cubic yards in any one year for his own use. Here again no reference is made to the commercial or non-commercial character of the use. *Any* removal of materials without authorization in excess of 50 cubic yards is prohibited unless one of the exceptions in ORS 274.550 (1) is applicable.

These sections read together indicate a legislative purpose to require the payment of a royalty for the removal of stream bed materials unless the taker could show that the removal was for one of the purposes stated in ORS 274.550 (1) and (3).